FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

98 JUL 17 PM 1: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

ELIJIAH BROWN,
    Plaintiff;

-vs.-

TRINITY INDUSTRIES, INC.,
    Defendant.

No. CV97-P-1700-S

ENTERED

**OPINION**

JUL 17 1998

    The defendant, Trinity Industries, Inc., filed a motion for summary judgment on May 15, 1998 that was considered at the June 26, 1998 motion docket. For the reasons expressed below, this motion is due to be granted.

Facts

    The plaintiff, a black male, was employed by Trinity Industries, Inc. (Trinity) as a millwright in Trinity's rail car manufacturing facility in Bessemer, Alabama. The plaintiff had worked in the maintenance department since his employment began in 1984. The Bessemer plant was scheduled to close, and did, in June 1997.

    On May 15, 1997, the plaintiff's foreman, Clarence Boatwright, told the plaintiff and another employee to remove some heaters. Mr. Boatwright subsequently needed the two employees for another task but could not find them. The employee whom Mr. Boatwright sent to look for the millwrights eventually reported to Mr. Boatwright that he had found them in the back of the warehouse with a forklift. A security employee later asked Mr. Boatwright if he knew anything about a stack of copper bars found hidden behind some machinery. The bars weighed 250 to 300 pounds and had to be moved with a forklift. Trinity's security department felt that the copper bars

were suspiciously out of place because they were usually taken to the machine shop when moved for legitimate reasons. Trinity had problems in the past with the theft of copper and bronze and was sensitive about the issue because of the impending shutdown.

      Trinity's security department questioned the plaintiff about the copper bars. The plaintiff maintains that another foreman, J.T. Glasscock, told him on May 9, 1997 to take the copper bars from the supply shop to the machine shop. The plaintiff also maintains that he left the bars on the machine shop apron on May 9 and did not see the bars again. Mr. Glasscock, who was not at work on May 15, 1997, denies telling the plaintiff to move the copper bars. Trinity contends that the plaintiff changed his story, first denying any knowledge of the copper bars, then admitting that Mr. Boatwright told him to move the bars, and then admitting that Mr. Glasscock told him to move the bars.

      After the Personnel Administrator concluded his investigation, the Senior Human Resources Manager and the Plant Manager decided to terminate the plaintiff's employment because of falsification and misrepresentation to the company. The plaintiff was not replaced by anyone because the plant was scheduled to shut down in a few weeks. The plaintiff contends that on occasion, Mr. Boatwright and Mr. Glasscock referred to the plaintiff and other African-American employees as "niggers," permitted other employees to do the same, and treated the plaintiff differently from other white millwrights. Specifically, the plaintiff maintains that the foremen ordered him to do menial tasks despite his seniority and talked to him as if he were stupid. The plaintiff subsequently filed a grievance with union officials, and then this action, alleging that he was discriminated against on the basis of his race in the terms and conditions of his employment, in violation of 42 U.S.C. § 1981.

2

## Analysis

The plaintiff must prove intentional discrimination to succeed on his claim of disparate treatment under § 1981. The plaintiff can do this by presenting direct evidence of discriminatory intent such as a decisionmaker's racial slurs made in the context of his decision. *See Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525, 1529-30 (11th Cir. 1985). The plaintiff can also prove intentional discrimination by presenting circumstantial evidence pursuant to the burden-shifting regime of *Mc Donnell Douglas Corp. v. Green*, 411 U.S. 293 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Lincoln v. Board of Regents of Georgia*, 697 F.2d 928, 935 (11th Cir.), *cert. denied*, 464 U.S. 826 (1983). First, the plaintiff must establish a prima facie case by showing that (1) he belongs to a protected class; (2) he was qualified for the position held at the time of discharge; (3) he was discharged; and (4) he was replaced by someone outside the protected class. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995). If the plaintiff cannot demonstrate the fourth element because of a reduction in workforce or other circumstances, the plaintiff can establish a prima facie case by showing that others outside the protected class received less discipline than the plaintiff did for the same misconduct. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment decision. *See Burdine*, 450 U.S. at 256-59. If the defendant can meet its burden of production, the plaintiff must then establish that the defendant's proffered reason was a pretext for race discrimination. *See McDonnell Douglas*, 411 U.S. at 804. To establish pretext in a work rule violation case, the plaintiff must show that the employer did not honestly believe that the plaintiff violated the rule. *See Elrod v. Sears, Roebuck*

*& Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

The plaintiff in this case has not presented direct evidence of discriminatory intent because he has not linked the alleged racial remarks to a decisionmaker making a particular decision. The plaintiff has not produced direct evidence showing that discriminatory intent motivated Trinity's decision to terminate his employment.

The plaintiff's indirect evidence also fails to establish discriminatory intent. Because the plaintiff cannot show that he was replaced by someone outside the protected class, he must rely on another method of establishing a prima facie case. The plaintiff has not presented sufficient evidence that Trinity retained white employees accused of stealing copper bars or of falsification or misrepresentation. Although Mr. Boatwright's deposition indicates that a white employee, Roy Rogers, was suspected of stealing copper parts, Mr. Rogers was never confronted by management, never formally questioned or accused, and never perceived to have falsified or misrepresented information. Trinity terminated the plaintiff for moving the bars without a plausible explanation and for misrepresentation. Roy Rogers was not accused of similar misconduct.

Even if the plaintiff could establish a prima facie case of race discrimination, the defendant has offered a legitimate nondiscriminatory reason for terminating the plaintiff's employment. Trinity believed that the plaintiff attempted to steal copper bars and then misrepresented the truth. Nothing in the record indicates that race discrimination motivated Trinity's decision. The plaintiff has failed to demonstrate that Trinity's reason was pretextual or that Trinity acted with anything other than an honest belief that the plaintiff moved the copper bars and changed his story about it. Even if Trinity's belief was mistaken, it did not violate § 1981; the plaintiff has not shown that Trinity terminated the plaintiff because of race. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470

4

(11th Cir. 1991).

Because the plaintiff has failed to prove intentional discrimination, the defendant's motion for summary judgment is due to be granted.


Dated: July /7, 1998

                                                          Chief Judge Sam C. Pointer, Jr.

Service List
    Mr. Jeffrey Bennitt
    Ms. Robyn G. Bufford
    Mr. John W. Hargrove
    Ms. Kelly H. Estes